UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL CAIN,

                    Petitioner,                          Case Number 15-10096
                                                          Honorable David M. Lawson

v.

LORI GIDLEY,

                    Respondent,

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

      Petitioner Darryl Cain stole a car at gunpoint from Courtney Spires in Detroit in 2010. For

his efforts, he was convicted of carjacking and related crimes and sent to prison for at least 20

years. Following his unsuccessful appeals through the state courts, he filed a petition for a writ of

habeas corpus under 28 U.S.C. § 2254, alleging a variety of claims, 14 in all. None of the claims,

however, supports issuance of the writ. The Court therefore will deny the petition.

I.

      The Michigan Court of Appeals summarized the facts of the case on direct appeal as

follows:

> This case arises from a carjacking that occurred in Detroit on June 4, 2010.
> Courtney Spires was driving home in his mother's 1995 gold Saturn. When he
> stopped at a red light at the intersection of East Grand Boulevard and Mack, a van
> pulled up next to Spires on the driver's side of his vehicle. Spires could not see the
> driver of the van, but he testified that defendant appeared at his window, pointed a
> silver revolver at him, and told him to get out of the car. Defendant ordered Spires
> to take off his pants and boots and stole them, along with Spires's wallet and cell
> phone. Defendant then sat in the driver's seat of the Saturn, a woman got into the
> front passenger seat, and they drove away as the van followed. Shortly thereafter,
> Spires reported the crime to the police and described the perpetrators as a black
> male and a black female.

On June 7, 2010, at about 12:40 p.m., Sergeant Frank Carroll of the Detroit Police Department was driving in an unmarked car near 11908 Wayburn in Detroit. Carroll worked with a multijurisdictional task force focused on automobile theft in Detroit and other nearby communities, including Grosse Pointe. As he was driving past 11908 Wayburn, Carroll noticed a gold Saturn in the backyard of an apparently vacant home. Two black males, one of whom was defendant, were standing near the car's raised hood. Using binoculars, Carroll was able to see the car's license plate number. He called the license plate number in to the Grosse Pointe Park police dispatcher and discovered that the Saturn was a carjacked vehicle.

Carroll called other officers and, when they arrived, they walked into the backyard. At that time, Carroll saw a third man near the front of the Saturn. He also saw a gray Ford Explorer in the backyard, which he learned was also a stolen vehicle. In addition, Carroll saw tools in the yard, including a lug wrench that was attached to a wheel of the Ford Explorer. Carroll and his team placed defendant and the two other men, Denzel Walker and William Johnson, under arrest. The officers searched defendant and found a key for the Saturn and two bullets. They impounded and searched the van that had been used in the carjacking and found a wallet and several cell phones, including Spires's.

Carroll took defendant, Walker, and Johnson to the Grosse Pointe Park police station for processing. Carroll informed defendant of his rights, asked defendant questions, and wrote down defendant's responses. Defendant said that someone had told him about the stolen cars and he denied ever carjacking any. He said that he was taking parts off the Ford Explorer to scrap them. Defendant denied owning a handgun and said that he found the bullets that were in his pocket. He then refused to sign the statement.

On June 8, 2010, officers called Spires to tell him they had recovered his mother's car. Spires went to the Grosse Pointe Park police station to identify the perpetrator in a photographic lineup. Although defendant was in custody at the station, Carroll explained that the station did not have enough young black men or the facilities required to conduct a live lineup. To conduct the photographic lineup, Sergeant Cregg Hughes compiled six mug shots, one of defendant and five others of men of similar age, with similar complexions, facial hair, and haircuts. When Spires saw the photographs, he immediately identified defendant from the array.

*People v. Cain*, 299 Mich. App. 27, 33–35, 829 N.W.2d 37, 41–42 (2012).

The jury found Cain guilty of carjacking, Mich. Comp Laws § 750.529a; unlawfully driving away an automobile (UDAA), Mich. Comp Laws § 750.413; two counts of receiving and concealing stolen property, Mich. Comp Laws § 750.535(7); felon in possession of a firearm,

Mich. Comp Laws § 750.224f; and possession of a firearm in the commission of a felony (felony firearm), Mich. Comp Laws § 750.227b.

The court of appeals affirmed the convictions. The Michigan Supreme Court vacated "that part of the Court of Appeals opinion stating that a 'completed larceny' is an element of unlawfully driving away a motor vehicle (UDAA)," affirmed Cain's convictions for carjacking and UDAA, and denied the application for leave to appeal in all other respects. *People v. Cain*, 495 Mich. 874, 838 N.W.2d 150 (2013). The Supreme Court denied Cain's petition for a writ of certiorari. *Cain v. Michigan*, 572 U.S. 1069 (2014).

Cain then filed a petition for writ of habeas corpus, which was held in abeyance so that he could return to the state courts to exhaust additional claims. Cain's post-conviction motion for relief from judgment was denied, *People v. Cain,* No. 10-006812-01-FC (Third Cir. Ct. May 26, 2015), and the Michigan appellate courts denied the petitioner leave to appeal. *People v. Cain,* No. 329210 (Mich. Ct. App. Nov. 13, 2015); *lv. den.* 500 Mich. 864, 885 N.W.2d 294 (2016). Cain then returned to this Court, the stay was lifted, and Cain filed an amended petition, which raises the following claims:

I. Prosecutorial misconduct.
II. Trial court misconduct.
III. Double jeopardy — carjacking and UDAA.
IV. Lack of probable cause to arrest.
V. Improper photographic lineup.
VI. Delayed arraignment past 48 hours.
VII. Brady violation.
VIII. Insufficient complaint and warrant.
IX. Abuse of discretion.
X. Double jeopardy felon in possession and felony firearm.
XI. Subject matter jurisdictional defect.
XII. Ineffective assistance of counsel — failure to challenge identification.
XIII. Ineffective assistance of counsel — failed to investigate potential witnesses.
XIV. Ineffective assistance of counsel — prosecutor misconduct and omittion [sic] of transcription.

Amend. Pet. at 5-13, ECF No. 11, PageID.67-75.

The warden filed an answer to the petition arguing that some of the claims are subject to the defense of procedural default. The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address this procedural question. It is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419

(2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)). The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

The claims Cain raised in his post-conviction motion were not decided by the state appellate courts with reasoned opinions; instead they were rendered in summary orders. Nonetheless, the deference required by the AEDPA still must be afforded. "Under [*Harrington v. Richter*], '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on its merits in the absence of any indication or state-law procedural principles to the contrary.'" *Barton v. Warden S. Ohio Corr. Facility*, 786 F.3d 450, 460 (6th Cir. 2015) (quoting *Harrington*, 562 U.S. at 99).

A.

Cain first argues that the prosecutor committed misconduct when she vouched for the carjacking victim's credibility. Responding to defense counsel's argument that the victim should not be believed, on rebuttal the prosecutor stated:

> I don't, I don't think he would even come in — I don't think he would come in here and lie. Absolutely not. He was brave coming in here and indicating that because stuff gets around in this city and, and he wouldn't have done it unless it was absolutely what had happened to him.
> . . .
> You know, I would say to you that this — I think he was very honest about everything. He tried, you know, to be very honest. And the young man was very brave in coming here. And I ask that you find [defendant] guilty on all charges in the information.

Trial Tr. at 90, 92, ECF No. 15-5, PageID.667, 669.

Defense counsel did not object to those remarks and the court of appeals reviewed the claim for plain error, finding none. The court reasoned that the comments must be viewed in the context of the defense argument, and they can be taken as an assertion that the victim had no motive to lie. Nor did the statements imply that the prosecutor had special, unshared knowledge about the victim's believability. And the court noted that any impropriety was cured by the court's instruction that the jury should consider only evidence when making its decision, and lawyers' statements are not evidence. *Cain*, 299 Mich. App. 37-38, 829 N.W.2d at 43-44.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, 567 U.S. 37, 45 (2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Ibid.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In assessing the petitioner's

-6-

claims under 28 U.S.C. § 2254, this Court must ask whether the Michigan Court of Appeals's decision denying Cain's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 2155 (quoting *Harrington*, 562 U.S. at 103).

The record in this case does not support such a conclusion. It is well established that a prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999) (citations omitted). But a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Ibid.* Improper vouching for a witness does not occur unless the jury reasonably could believe that the prosecutor was implying a personal belief in the witness's credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987).

In this case, the prosecutor did not argue that she had any secret special knowledge about the victim. Instead, she confined her remarks to the facts adduced and the fair inferences that could be drawn from them. *See Cockream v. Jones*, 382 F. App'x 479, 485 (6th Cir. 2010) (finding no improper vouching where the prosecutor did not improperly "assert or imply that he drew from anything but [the victim's] trial testimony to argue that she was credible"). When viewed in context, the prosecutor simply asserted that the victim had no motive to lie. Cain's argument relies on the subtle implications he urges the Court to draw from the prosecutor's remarks. But that is not enough to offend due process. *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (observing that "generally, improper vouching involves either blunt comments, or comments that

imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony") (citations omitted). A prosecutor does not engage in vouching by arguing that her witnesses have no reason to lie when the record is devoid of evidence that would support a motivation to lie. *See United States v. Jackson*, 473 F.3d 660, 672 (6th Cir. 2007). And courts recognize that the "prosecution has 'wide latitude' during closing arguments to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009). The prosecutor's remarks here were responsive to defense counsel's closing argument.

Moreover, even if these isolated remarks could be construed as vouching, they were only a small part of a seven-page closing argument and a four-page rebuttal, which summarized the evidence. Any alleged vouching for the victim's credibility did not rise to the level of a due process violation, because the jury was informed by the judge that the prosecutor's arguments were not evidence and the judge instructed the jury as to the factors to consider in evaluating the credibility of the witnesses' testimony. *Byrd v. Collins*, 209 F.3d 486, 537-38 (6th Cir. 2000).

The state courts properly applied controlling federal law in rejecting Cain's claim of prosecutorial misconduct. He is not entitled to habeas relief on his first claim.

## B.

Cain next contends that he was denied a fair trial because of judicial misconduct when the court referred to him as "the perpetrator" in the jury's presence during defense counsel's cross-examination of one of the police officers. The exchange went like this:

> Defense Counsel: Anywhere does it ever show that the other two defendants were ever put in a photo show up?
>
> Sergeant Carroll: No, not to my knowledge.
>
> Defense Counsel: Yet you charged [defendant] with the carjacking?

Prosecutor: I'd object. That's not true, your honor.

Defense Counsel: You requested a warrant for it and got it.

The Court: Well, it's — I'm not sure how or why it's relevant. We know that from this witness the only perpetrator that was in the photo lineup was the defendant. Beyond what the others were doing or why they weren't or who charged them or who made the decision to charge, I don't know how that's relevant. They weren't in the photo lineup.

Trial Tr. at 217, ECF No. 15-4, PageID.557.

The Michigan Court of Appeals rejected this argument, in which Cain accused the trial court of directing a verdict of guilt. The court wrote:

> Under the Sixth and Fourteenth Amendments, a criminal defendant is indisputably entitled to a jury determination on all elements of the charges against him. It is impermissible for a court to direct a guilty verdict. However, the trial court here did not instruct the jury that defendant committed the carjacking. Rather, the court merely restated the evidence already on record — that Spires identified defendant as the perpetrator of the crime. This in no way directed the jury to reach a guilty verdict.
>
> Further, were we to conclude that the trial court misspoke, the single statement was made in isolation and the court instructed the jury that the court's statements do not constitute evidence. The court also instructed the jurors that defendant was presumed innocent and that it was their duty to weigh the evidence and determine whether defendant was guilty beyond a reasonable doubt. Finally, the prosecution had already presented considerable evidence linking defendant to the crime. Carroll testified that he found defendant near the stolen Saturn with the hood up, defendant had a key for the Saturn in his pocket, and, again, Spires unequivocally identified defendant as the carjacker during the photographic lineup and at trial. Therefore, if any error occurred, it was clearly not outcome-determinative.

*Cain*, 299 Mich. App. at 40–41, 829 N.W.2d at 44-45 (citations omitted).

The trial court in a criminal case may not direct a verdict of guilty. *Krzeminski v. Perini,* 614 F.2d 121, 124 (6th Cir. 1980); *Schwachter v. United States*, 237 F.2d 640, 644 (6th Cir. 1956). But the judge in the present case did not do that. When viewed in context, the judge was merely stating the obvious, that Cain had been identified by Mr. Spires as the perpetrator of the robbery

and carjacking. There was no instruction that the jury must make that finding, and no suggestion that the trial court had done so. The state courts did not misapply federal law on that elementary point.

Nor did the trial court's comments betray bias against Cain. Under the Due Process Clause of the Fourteenth Amendment, a criminal defendant is entitled to a fair trial in a fair tribunal before a judge with no actual bias against him or an interest in the outcome of the case. *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Cain's due process right was not abridged. A trial judge has a wide degree of latitude in conducting trials, as long as he projects an attitude of impartiality and scrupulously avoids giving the jury the impression that the judge believes that the defendant is guilty. *Harrington v. State of Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997). Although the trial judge's ruling on the objection might have been phrased more delicately, the comment did not amount to a due process violation, and the state appellate courts' consideration of that cliam did not contravene or unreasonably apply federal law.

C.

Cain argues that his convictions for both carjacking and UDAA (claim III), and his convictions for both felon in possession of a firearm and felony firearm (claim X) violate the prohibition against double jeopardy found in the Fifth Amendment. In its order on Cain's application for leave to appeal, the Michigan Supreme Court held that Cain's convictions for carjacking and UDAA did not violate the Double Jeopardy Clause:

> On order of the Court, the application for leave to appeal the December 20, 2012 judgment of the Court of Appeals is considered and, pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we VACATE that part of the Court of Appeals opinion stating that a "completed larceny" is an element of unlawfully driving away a motor vehicle (UDAA). A "completed larceny" is not an element of UDAA because the offense does not require felonious intent, only movement of the vehicle without the owner's consent. MCL 750.413; *People v. Stanley*, 349 Mich. 362, 364, 84 N.W.2d 787 (1957) ("Intent to steal is not an ingredient of the offense.").

Instead, UDAA merely requires driving or taking away a motor vehicle without the owner's consent. *See* MCL 750.413. We otherwise AFFIRM the Court of Appeals holding that defendant's multiple punishments for carjacking and UDAA do not violate his double jeopardy rights because UDAA requires proof that defendant moved the vehicle, which carjacking does not, and carjacking requires proof of the use of force or violence, or the threat thereof, which UDAA does not. In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court.

*Cain*, 495 Mich. at 874–75, 838 N.W.2d at 150. The Michigan Court of Appeals rejected Cain's other double jeopardy claim:

> Defendant complains that his convictions of both felon-in-possession and felony-firearm violated double jeopardy principles. In *People v. Calloway*, 469 Mich. 448, 452, 671 N.W.2d 733 (2003), the Michigan Supreme Court ruled that the Legislature intended to impose an additional sentence "whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute." The offense of felon-in-possession is not one of the four exceptions specifically listed in the felony-firearm statute. *See* MCL 750.227b. Therefore, pursuant to clearly established precedent, defendant's convictions for felon-in-possession and felony-firearm did not violate his double jeopardy rights. *See Calloway*, 469 Mich. at 452, 671 N.W.2d 733.

*Cain*, 299 Mich. App. at 53, 829 N.W.2d at 51.

The Double Jeopardy Clause of the Fifth Amendment states that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. The Clause is "applicable to the States through the Fourteenth Amendment," *Lockhart v. Nelson,* 488 U.S. 33, 38 (1988), "[a]nd it protects against multiple punishments for the same offense," *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969), *overruled in part on other grounds by Alabama v. Smith,* 490 U.S. 794 (1989).

> What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment. Specifically, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."

*Jackson v. Smith,* 745 F.3d 206, 211 (6th Cir. 2014) (quoting *Missouri v. Hunter,* 459 U.S. 359, 366 (1983).

Although the Double Jeopardy Clause "protects against multiple punishments for the same offense," *Pearce*, 395 U.S. at 717, it does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses. As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . . , the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). Therefore, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986). When "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Hunter*, 459 U.S. at 368-69.

The state appellate courts, citing the Fifth Amendment, proceeded to analyze the issue by comparing the elements of the two crimes — carjacking and UDAA in one instance, and felon in possession of a firearm and felony firearm in the other — to see if they amounted to the same offense. That analytical test is sometimes referred to as the *Blockburger* test, after *Blockburger v. United States*, 284 U.S. 299, 304 (1932). That test "inquires whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger*, 284 U.S. at 304; *see also Brown v. Ohio*, 432 U.S. 161, 166 (1977) ("This test emphasizes the elements of the two crimes. 'If each requires proof of a fact that the other does

not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. . . .'") (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975))).

Those courts accurately applied that test and adhered to the principle of legislative interpretation. The Michigan Supreme Court determined that the Michigan Legislature intended cumulative punishment for the offenses of carjacking and UDAA and the Michigan Court of Appeals concluded that the state legislature intended cumulative punishments for felon in possession of a firearm and felony firearm. Once a state court has determined that the state legislature intended cumulative punishments for separate offenses, a federal habeas court must defer to that determination. *See Banner v. Davis,* 886 F.2d 777, 780 (6th Cir. 1989).

Cain's multiple convictions resulting from the events of June 4, 2010 did not violate the Double Jeopardy Clause.

## D.

Cain asserts several claims that allege violations of his rights under the Fourth Amendment. He contends that his arrest was unlawful due to a lack of probable cause (claim IV), his arraignment was delayed over 48 hours and therefore his detention was illegal (claim VI), the prosecutor failed to turn over the complaint and arrest warrant before trial, which prevented defense counsel from challenging the legality of the arrest (claim VII), and the complaint and warrant themselves were insufficient (claim VIII). The upshot of these arguments is that evidence collected through these procedures should have been suppressed at trial because the arrest and detention violated the Fourth Amendment. Cain also contends that the trial court abused its discretion when it did not suppress all the evidence derived from the arrest (claim IX).

These claims will not be addressed on the merits, because Cain cannot overcome the obstacle created by *Stone v. Powell*, in which the Supreme Court held that "where the State has

provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494-95 (1976).

The Sixth Circuit Court of Appeals employs a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quotation marks omitted).

Michigan provides ample opportunity for litigation of Fourth Amendment claims. Typically, such claims are addressed by means of a motion to suppress filed before trial. *See People v. Ferguson*, 376 Mich. 90, 93-94, 135 N.W.2d 357, 358-59 (1965) (holding that motions to suppress must be brought timely where the factual circumstances constituting the illegal arrest or seizure are known to the defendant in advance of trial). Cain did not file such a motion, but not because the state courts' procedures prohibited him from doing so. And he did raise his Fourth Amendment claims before both the Michigan Court of Appeals and the Michigan Supreme Court on direct appeal. Both courts analyzed and rejected his claims. That is enough to satisfy *Powell*'s "opportunity" requirement. *See Good v. Berghuis,* 729 F.3d 636, 639 (6th Cir. 2013) (stating that "[t]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim").

Cain's seventh claim is styled as a *Brady* violation. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment,

irrespective of the good faith or bad faith of the prosecution"). But *Powell* bars that claim as well, because it essentially involves a Fourth Amendment attack on the validity of petitioner's search and arrest. *See O'Quinn v. Estelle,* 574 F.2d 1208, 1209-10 (5th Cir. 1978) (holding that the petitioner's claim that prosecution failed to disclose exculpatory information, which involves due process guaranty of a fair trial, was part of his Fourth Amendment claim, since exculpatory information would eventually be used to attack the search warrant)*; see also Simpson v. Kreiger,* 565 F.2d 390, 392 (6th Cir. 1977) (refusal to disclose informant's identity did not deny petitioner a full and fair opportunity to litigate Fourth Amendment claims in state court).

Likewise, Cain's delay-in-arraignment claim is barred from review by *Stone v. Powell*. The Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention. *Gerstein v. Pugh*, 420 U.S. 103, 126 (1975). But because Cain had a full and fair opportunity to litigate his claim of a lack of speedy arraignment in the state courts, this Court is precluded from granting habeas relief on that ground. *See Ahlswede v. Wolff*, 720 F.2d 1108, 1110 (9th Cir. 1983); *Ben-Yisrayl v. Davis*, 245 F. Supp. 2d 960, 968 (N.D. Ind. 2002).

E.

Next, Cain takes issue with the pretrial identification procedures that the police used after he was arrested. He contends that a photo array should not have been used when he was available for a corporeal lineup, and the photo array itself was unduly suggestive. The court of appeals rejected both arguments. First, it found a legitimate exception to the general preference of physical lineups over photo arrays: "Sergeant Hughes explained that, at the police station, there were not enough young black men with similar physical characteristics to defendant." *Cain*, 299 Mich. App. at 47-48, 829 N.W.2d at 49. Second, it held that the photo spread was not suggestive. The court explained that Hughes "compiled six mug shots for the photographic array, one of defendant

and five others of men of similar age with similar complexions, facial hair, and haircuts.  There is no indication that this process was impermissibly suggestive or that it gave rise to a substantial likelihood of misidentification."  *Id.* at 48, 829 N.W.2d at 49.

These holdings did not contravene or unreasonably apply federal law.  The Due Process Clause requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 241 n.6 (2012) (quoting *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977)).  A pretrial identification procedure violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification.  *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson*, 432 U.S. at 99 (holding that due process challenges to identification procedures are reviewed using the *Biggers* test).  The evil to be avoided is that an initial improper identification procedure will result in misidentification at trial and will unduly influence later investigation. *United States v. Wade*, 388 U.S. 218, 229 (1967).

A criminal defendant has the initial burden of proving that an identification procedure used by law enforcement during the investigation was impermissibly suggestive.  It is only after a defendant meets that burden that the court must require the state to prove that the identification was reliable, independent of the suggestive identification procedure. *Id.* at 240 n.31.  If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred.  As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification.  *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

A defendant does not have a constitutional right to a corporeal line-up. *See Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 866 (E.D. Mich. 2009); *Payne v. Smith*, 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002). "[T]he government is not required to conduct a lineup . . . and the availability of time for a lineup plays no part in determining whether a photographic spread is impermissibly suggestive." *Causey*, 834 F.2d at 1286.

Nor has Cain overcome the state courts' finding that the photo array was not suggestive. He has submitted no evidence to support that claim. Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding). Cain has provided no copies of the actual photographic array nor has he given any reasons why the array was unduly suggestive. He is not entitled to habeas relief on either of his claims addressing the pretrial identification procedures.

## F.

Cain argues that the state trial court did not have jurisdiction to try him because the prosecutor did not file a criminal information within the time allowed. That argument, however, does not invoke a federal concern. The "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). It is well-settled that a perceived violation of state law may not provide a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The Court may grant a writ of habeas corpus only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A "state court's interpretation of state jurisdictional issues conclusively establishes

jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001). Therefore, any state-law procedural defect in the filing of the charging documents that allegedly affected the jurisdiction of the state court to try him does not implicate Cain's federal constitutional rights.

## G.

In his last group of claims, Cain contends that he was denied the effective assistance of counsel. He says that his lawyer performed deficiently by failing to challenge the pretrial identification procedures (claim XII), by failing to call a certain police officer as a defense witness (claim XIII), and by failing to object to the prosecutor's misconduct (claim XIV). The state court rejected these claims when denying the post-conviction motion in which they were first raised. The court did not address claim XII on the merits, mistakenly believing that it had been addressed on direct appeal. AEDPA deference does not apply to that claim here. *See Ray v. Bauman*, 326 F. Supp. 3d 445, 457-59 (E.D. Mich. 2018).

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing

professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White v. Woodall*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013) ). Here, Cain fails both the deficient performance and prejudice elements of his claim that trial counsel failed to challenge the pretrial identification procedures. As noted above, the procedures were not suggestive, and Cain had no right to a corporeal lineup. Even under a *de novo* review standard, he cannot show that counsel failed to comply with prevailing professional norms. *See Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir. 1998) (counsel cannot be ineffective for failing to pursue a line of argument lacking in merit); *Perkins v. McKee,* 411 F. App'x 822, 833 (6th Cir. 2011). Nor can he show that filing the motion would have made a difference. Cain has not shown that the photographic lineup procedure was unduly suggestive. Moreover, the record amply demonstrates that the victim's identification of Cain as the perpetrator was independently reliable. The victim had plenty of opportunity to observe Cain at the crime scene, and the certainty of his in-court identification was demonstrable. *See Howard v. Bouchard,* 405 F.3d at 481-85.

Cain faces more difficulty with his other two claims. Under AEDPA, the standard for obtaining relief under *Strickland* is very difficult to meet because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Cain's argument that his lawyer was ineffective by failing to call Officer Tiffani Bowles-Davis as a witness dies aborning. Cain never produced an affidavit from Officer Bowles-Davis in the state court or here, nor did he furnish any indication of her proposed testimony or willingness to testify on his behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Cain has offered no evidence beyond his own assertions on whether Officer Bowles-Davis would have been able to testify and what the content of her testimony would have been. In the absence of such proof, Cain is unable to establish that he was prejudiced by counsel's failure to call Officer Bowles-Davis to testify at trial. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007).

Likewise, Cain's claim that his trial counsel was ineffective by failing to object to the prosecutor's misconduct fails both elements of the *Strickland* test because there is no merit to the underlying claim, and he has not shown that there is a reasonable probability that the proceeding would have been different if the objection were made. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).

Lastly, Cain contends that his appellate counsel was ineffective by failing to raise his ineffective-assistance-of-trial-counsel claims on direct appeal.

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner ordinarily must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687. However, it is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

The trial court denied relief on this claim when it was presented in Cain's post-conviction motion. The state appellate courts rejected it as well, albeit in summary orders. Those decisions reasonably applied the governing federal law. Appellate counsel presented a variety of colorable issues in his appellate brief. There was nothing in the record that suggested an ineffective-assistance-of-counsel claim would prevail. This Court has determined that the claim was properly rejected by the state courts on post-conviction review. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452

(6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ). Because the claim cannot be shown to be meritorious, appellate counsel was not ineffective by his handling of Cain's direct appeal. He is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: July 19, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on July 19, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

---